Thank you your honor and may it please the court Tony Francois for plaintiffs and appellants Chantel and Michael Sackett. I'd like to start my time first of all I'd like to plan on reserving five minutes for rebuttal of the 20 minutes and I'd like to start by addressing the EPA's claims about mootness and make sure that I answer any of the court's questions about that. As context for that the part of the compliance order that the Sackett's have been contesting throughout this litigation and the only part of it that they've been contesting is the portion of it that claims regulatory authority over their property and that is then in turn based on a separate document that the that the agency is included in the record it's a jurisdictional determination. The agency's by withdrawing the compliance order in a letter this March that the case is moot because there's no further relief that the court can can fashion. We disagree with that for a number of reasons. I'll point out first that the withdrawal of the compliance order really is only partial. It withdraws the order that the Sackett's restore the property but in follow-up correspondence with the agency the agency declined to clarify whether they were abandoning their claim that's also in the order of regulatory authority over the property. They also were not forthcoming with whether or not the withdrawal letter aside from saying that they would not take enforcement action for past actions by the Sackett's was intended to communicate that they wouldn't take enforcement action for future actions such as building a house on the lot. So the compliance letter or the withdrawal letter really only says that they won't take further action for now against the past actions of the Sackett's. It does not withdraw the jurisdictional determination and that jurisdictional determination is what we've been litigating about. Mr. Frenslaw. Counselor, can I ask you a question? Do you want to? No, go ahead, Judge Gould. Go ahead, please. So my question is this. If the if the federal agency decided to take future administrative action and I'm not very good at predicting what federal agencies are going to do these days or on others. So let's assume that that could happen. Would would they with the with that case be based on the then current record? In other words, would there be a different record to decide that upon than the record we've got now? And would there be different regulatory terms that applied? So two parts to the answer to that, Your Honor. First of all, certainly what's in the current record as far as jurisdiction goes remains in EPA's file and would be part of any subsequent the record of any subsequent enforcement action. They might try to augment it, but certainly what's here now would be part of that. The second part of your question was regulatory provisions. Unfortunately, we don't really know what the future holds for what the regulatory provisions are going to be. I mean, we provided some detail in our reply brief that I want to say pages 26 and 27 about the very back and forth history of these regulations over the last several years. And I think it's reasonable to expect that there's probably some changes coming in the relatively near future as well. So what we're what what our main argument is on mootness, though, your honor, is that it's the government's burden to establish that it's current and ongoing assertion of jurisdiction over the property will not recur in the future. And the you know, the withdrawal letter that only partially withdraws the compliance order just doesn't doesn't do that. Judge attacking. Yes. Thank. Thank you. Am I correct that you the jurisdictional determination form at ER 206 is really what's that issue here? The that jurisdictional determination form is the is the record for the it's so it's hard to say it's just that that's at issue because that then is the basis for the agency's claim in the compliance order that they have jurisdiction over the property. Right. Stand alone. Right. And so I guess my basically, um, waters of the U. S. Within the Clear Clean Water Act at one aid, the boxes checked wetlands adjacent but not directly abutting our P. W. Am I correct, though, that the definition of waters of the U. S. Has since changed. And so wouldn't that automatically mean that this jurisdictional determination form is no longer valid? Well, if the your honor, if the agency were to clarify that, I think this would be a lot simpler question. But instead, they're defending it. And the it really boils down, we think, to, um, whether the court is going to apply the Rapanos concurrence or plurality, because if the concurrence is the controlling opinion, then that requires the agency to do a significant nexus determination. And that's what this form is. The jurisdictional determination form is to establish significant nexus. So the regulations that the agency recently adopted April this year don't include doing significant nexus determination. There's litigation pending now over whether or not those regulations will survive. But the you know, our argument, obviously, is that the plurality controls and that the, you know, the property as a matter of law isn't regulated by the by the Clean Water Act. But the but this document, the agency hasn't repudiated it. Um, and you know, it remains in the file. And as we've laid out in our brief remains the official position of the agency. It also has collateral legal effects, which we think are a key part of the analysis. Now we've cited to Idaho case law that makes clear that this would have to be disclosed to a potential buyer of the property, and it leaves uncertain whether the Sackett's could even build on the property without without facing further enforcement. Doesn't the first Sackett decision conclusion that the compliance order was the final agency action in this case mean that the G, the approved jurisdictional determination form can't be the final agency action? I'm not sure what the answer to that is, frankly, your honor. The subsequent Hawks decision, um, also, you know, raises the argument or allows the argument that that that J. D. Is separately challengeable. But we think it's important to, you know, look at the mootness question from the perspective of the burden that the government has to carry after it voluntarily withdraws the order in convincing the court that there's no further relief the court can afford, and the court can invalidate the jurisdictional determination. And so we think that in the clock, well, go ahead. Go ahead. Just gonna say clearly, the government has the burden in an uphill battle to convince a panel that something's moot that was once live. They say they're not gonna do something. But in terms of jurisdiction as to whether there's a final order that's now reviewable, am I wrong in thinking that that's, in fact, the burden of the appellants? There's the appellants have the burden of showing there's a final order before review that gives us jurisdiction. Our understanding that question, your honor, is that the compliance order itself is the final agency action that gives the court jurisdiction in the first instance. The question, then, when the agency withdraws that action is we read the cases, and we've cited a couple in our in our reply brief where this court found continuing fiction even after an action were withdrawn. Isn't whether as originally framed, the complaint would state a claim without that action. It's it's just a traditional mootness analysis of whether or not the court can afford confession any any relief. And, you know, by invalidating the jurisdictional information, the court can afford relief. I would most there are further questions. Can I just ask you? So is another way of putting what you just said that the original complaint is not moot because the refusal to withdraw the jurisdictional determination shows that it's not really permanently withdrawn. This whole effort is not permanently withdrawn. The government hasn't shown that it won't recur because they're still sort of doing part of it. So it's not the part like if you were saying the part shows that we could give relief. But I guess I had thought you were trying to make a mootness argument about the part that's left. Whether or not it's reviewable shows that the original complaint is reviewable. I think I take your your honor's question correctly. Your argument is that the the original complaint establishes jurisdiction. That's law. The case, the withdrawal of that order leaves the jurisdictional determination in place. And that remains reviewable in this court because it has collateral legal effects. And, um, um, and the fact that the question whether or not the original complaint could have simply challenged the jurisdictional determination is is not really part of the analysis. I like this. So maybe I maybe I didn't ask this clearly. Maybe I still can't articulate it perfectly. But I'm not sure you need to show that the jurisdictional determination is reviewable. I think you just need to show that the government hasn't shown that it's given up on this property and you're using the jurisdictional determination to try to show that, right? That's correct, Your Honor. That's correct. And, of course, the jurisdiction determination is what we've been litigating over for the past almost 13 years anyway. So, um, speaking then with my remaining time to the merit of which of the Repanis opinions is is controlling. We're aware, obviously, of the city of Healdsburg decision on this court's prior vacated decision in Robertson. We think that we briefed that very thoroughly. We think that the key in looking at that now is the Supreme Court's recent decision in County of Maui. And in that decision, all there's four separate opinions. They sharply differ over the question in that case, whether under the Clean Water Act migration of a pollutant through groundwater is regulable. But all four of those opinions rely in different ways on the Repanis plurality to decide the question that's in front of them. But it's not about wetlands, right? That case doesn't deal with the issue we have here. It does not. It addresses a different issue, Your Honor. That is correct. But the significance of its treatment of the Repanis plurality is that it relies on that as in order to try to answer the question before it. So we're not arguing that the the county of Maui decision says, um, because it does deal with groundwater and it doesn't get into exactly what we're dealing with here. That's correct. But the point about the marks analysis or application of fractured Supreme Court decisions is that under marks analysis, either one of the or there isn't or there aren't any. And the Supreme Court is quite clearly relied very heavily on disagreed amongst themselves that the plurality of Repanis is an applicable precedent to resolving the question in front of them in in in county of Maui. Say we say we disagree with you about that. Say we agree with the Robertson reasoning, even though Robertson was vacated his moot because the party died. But say we would just say the exact same thing as Robertson. If we get to the merits of this case, are you actually better off with us doing that than just saying that this case is moot? Um, well, we think there's two important things further for the court to look at them on the merits. Um, first of all, we've we've we've pointed out in our briefs that the agency never actually did a wetland delineation on the Sackett's property and that, uh, you know, the appropriate. Sorry, let me just so I know you have lots of reasons why you should win on the merits. But just so I can understand where we are with the mootness because I'm gonna press the other side on the mootness point to would you actually rather lose on the merits if that's up? If you get to the merits, or would you rather have us say the case is moot? Um, I um, for a variety of reasons, I'm not sure I can go into all of them. I think a decision on the merits is important in this case. Um, if if the case is if the case is mooted, then they go all the way back to the beginning. They've got to go through an expensive process to figure out if their property is being able to get a decision on the merits now. So I guess we would take the decision on the merits, um, sort of looking at it that way. So, you know, in my remaining time, I also want to mention that I alluded to our argument about the wetland delineation. Uh, the EPA argues that the 10 cup case says they don't have to use the 1987 manual. There are a couple of the 10 cup case assumes that they have used a different, um, a regional supplement, and they didn't in this case. And so, you know, they they're required to use the 87 manual at the time that this, uh, decision was made. Secondly, the the order itself, the decision itself says that they've based it, you know, the termination of the properties of wetland on the 1987 manual, and so it can only be upheld on that basis. And so they need to show the types of, um, wetland data sheets, soil data sheets and other investigation methods that the 87 manual requires. We detail those in our in our briefing, and there simply isn't any of that in the record at all, including Mr Olson's return visit to the property. He did not. He did none of the wetland delineation work. He just tried to do the analysis. The final point I'll try to make and then reserve some time is that, uh, in the significant nexus analysis, can I just sorry, could I just ask you one question on that? How could so Rapa knows wasn't decided until 2006. So if we think that I know you don't agree about the concurrence governing, but if we thought it did, how can the wetlands determination be based on something in 1987 instead of something that would be past 2006 if they're applying the Kennedy concurrence? Because it's two separate factors, Your Honor. So there's there's one methodology for determining whether or not something is a wetland, and that's the 1987 manual. And then subsequent to Rapanos and the application of the concurrence, there's an additional analysis that Mr Olson purports to do in his memo whether or not that wetland has the requisite significant nexus with, in this case, Priest Lake. So those are actually two different analyses. And so the 87 manual, for example, would not tell you whether or not there's a significant nexus. And a significant nexus analysis would not reveal whether or not any particular place is a wetland under the under the statute. And that's more of a procedural argument that they didn't follow the 87 approach rather than substantively they couldn't have? Well, it's a statutory requirement that they use that manual, and the manual has actually stepped up procedures for use in enforcement cases. So we would say it's actually a statutory requirement. And I'd like to try to reserve the balance of my time if I might. Okay, let me suggest this. Stacey, increase the rebuttal time from a minute, three seconds to five minutes. So what I'm gonna do, Mr Francois, is give you the full five minutes that you initially planned for rebuttal. And if if counsel for the government wants a few extra minutes added to its opposition argument, we'll add that also. Thank you. So why don't we proceed now, Mr. Doeth, do you want me to add three or four minutes to your block? Or do you think you can marshal all your points in 20 minutes? I appreciate the offer. I will try to be concise and fit my discussion in 20 minutes. Okay, thank you. May I proceed, Your Honor? Please proceed. May it please the court. Brian Toedt for Defendants Appalese, the EPA and Andrew Wheeler as EPA's administrator. This case is moot. EPA has provided plaintiffs with the very relief that they have sought to the Supreme Court and now back since the outset of this case to be relieved of EPA's administrative compliance order against them. That order was issued more than a dozen years ago, and over the course of three different presidents since then, EPA has taken no steps to actively enforce that order. Critically, in March of this year, EPA sent plaintiffs a letter withdrawing the order, which is the final agency action reviewable under the Administrative Procedure Act, as confirmed by the Supreme Court. Now that that letter is no longer, there is no final agency action for the court to review. So it sounds like they have asked you to withdraw the jurisdictional determination. Can you explain why the agency has not done so? They made that assertion in their their reply brief. I don't I don't recall that they actually asked us before they filed their reply to withdraw that letter. But EPA doesn't need to. And here's why. This is just a document in the administrative record supporting the agency's reasoning for the now withdrawn final agency action. But it's a document that says that their land is a wetland that's under the Clean Water Act. And I understand their argument to be until that's gone. We don't know if we can build a house on this land or do anything without problems because the wetland and if the agency is unwilling to stop saying it's a wetland, then I have a very hard time seeing how this case is not still alive. So there is an avenue for them to make the request to determine whether their property and new activity on the property would be regulated. And that is to avail themselves of the remedy in Hawks, which held that reviewed a what what is called an approved jurisdictional determination issued by the Corps of Engineers. That is a specific you don't have that here. You don't have one that's quite as formal. So so what they have here is still some document that EPA thinks this is a wetland under the Clean Water Act. So are you willing to have us stay the case for a month while they can work this out with you and you can withdraw the jurisdictional determination? Your Honor, I we we can discuss that. I I want to just respond briefly on the legal significance of this document, which is that it is. It has no legal significance. So then why not withdraw it? So we we potentially be willing to explore that as an option. Here's the reason why we don't think we need to do that. It is, you know, it's not an action at all. The EPA requires final agency action. This is not even an agency. I just have to tell you that as long as you're still hanging on to this document that says you can control their land, at least I personally am not going to understand how this case is moved because you're still trying to have the first step of an enforcement against this land. So if it's really not important and it really doesn't do anything, then file a letter next week saying it's gone and maybe this case will be moved. But in the meantime, I personally am having a very hard time seeing how you can have your cake and eat it, too. I hear what you're saying, and I'll put that request to the agency. I'd like to continue, though, talking about the fact that this document does not have any legal significance because it is not legally binding upon the agency. In fact, if you look at both the answer and the complaint, the parties agree that this document was created by a staff ecologist of EPA who had no authority to bind the agency. It's one document in an administrative record of several hundred pages supporting the agency's decision. But I'll mention a couple other documents. In fact, one that is referred to by this hand-completed form are the handwritten field notes of the same staff ecologist. So this sounds like these are reasons why you're saying it really is supported that this is a wetland, right? No. It's why I'm saying that, okay, so just to be clear, this is not an agency action that we think needs to be withdrawn. It's a record. Under the Federal Records Act, it can't be destroyed. So can they build on this land tomorrow? I don't have an answer to that because there are new regulations in place. So then how can we say you've met your burden to show that this is not reasonably likely to occur then? They agree. Look at their conduct. So at Reply Brief, page 22, they acknowledge that their view under the new regulations is that they may go out and build on the property and fill the property tomorrow. That's their view. And they say in their Reply Brief at 22 that they are going around the country intervening in cases challenging EPA's new rule on the grounds that they can now do what they want to do, but they couldn't under the old rule. Until the agency agrees, we still have a dispute. Your Honor, that issue was not put before the district court, and I don't think that this court needs to resolve on the issue. Well, so that gets to another question, though, because you say in your brief that you had decided years ago not to enforce this and then didn't tell them until the middle of the appeal here. So to say the district court didn't discuss this is kind of your fault, right? So the decision made years ago was that the government didn't assert a counterclaim when it filed its answer in this case. That's a considerable risk that we have waived any civil enforcement claim that might be a compulsory counterclaim and required to be asserted or lost forever. So we filed the original answer, and yes, Judge Cooley, it looks like you have a... If the federal government today in the modern era is still like the federal government's been for my entire life, then I suspect it would be true that Mr. Toth would not have the ability to answer on the spot the question that Judge Friedland's concern, which can relate to that. But I've already had one opinion in this case that went up to the Supreme Court and was reversed on a procedural issue. And I would hate to have a second one without fully understanding jurisdiction and what the court's current doctrine is on what's the final order. Yes. So the form that's hand-completed here is not a final agency action. And a final agency action is necessary for there to be a cause of action under the APA, which is the statute that provides the waiver of sovereign immunity that gives rise to the court's jurisdiction to entertain plaintiff's complaint against the United States. So it is our position that having withdrawn the final agency action here, and mind you, this case went to the Supreme Court on that very issue, what the final agency action that was reviewable in this case was. We just don't see how the court has jurisdiction any longer to review documents in the administrative record that were simply supportive of the agency's decision. We're not in this. So the Supreme Court told us that this case at one point had a reviewable agency action. And as I understand it, your burden is to show us that it's moot now, that this case, that once had jurisdiction, the Supreme Court already told us that, is now moot. And I understand that your burden in doing that is to show us that there is no reasonable expectation that this don't, we answer that question by trying to figure out whether it's going to recur. But if we say, well, we can't tell if it's going to recur, we're back to the original case where there was jurisdiction according to the Supreme Court. Can you tell me why that's the wrong way to think about it? Well, we do have the burden. I agree we have the burden. And if you can't figure it out and you conclude we haven't met our burden, or you conclude that things are then yes, you're right. The proper outcome is that we haven't met our burden and it remains the law. But I would submit that even apart from withdrawing this, even apart from this document here, and I'd like to continue making the point, but I'll move on. There is no reasonable likelihood that the EPA will pursue a new administrative compliance order against the SACIS. It's said as much in this letter, and that is not just some sham. There is a policy change that happened during the course of this appeal. EPA has promulgated, along with the Corps, new regulations that would govern the plaintiff's conduct going forward. And as I mentioned, Hawks provides that they can go to the Corps of Engineers to get a definitive answer on whether their property is covered under the new rules. And that answer by the Corps, not by EPA, is reviewable when the Corps issues it through its formal process. That's what Hawks says. But we still have the reviewable action from the original lawsuit unless you can convince us this case is moot. And I'm not sure why the original lawsuit doesn't still stand at this point because you haven't told us that they can build on their land or that you can guarantee that they won't ever be enforced against in the future. So I hear what you're saying. I hear your concerns. I think the cases that my friend on the other side is relying on for this notion that even despite withdrawing a final agency action, the Court can still entertain the case, come in the context of a pattern or practice of the agency. For example, the Rosemere case, where EPA's civil rights, Office of Civil Rights, was engaging in what the Court found to be a pattern of delaying adjudicating complaints about the misuse of Title VI money under the EPA. EPA was consistently missing these deadlines. And then once it was sued, it would go and quickly comply with the deadline, prepare what it needed to do in the way of processing the complaint. And this Court said, well, that's not moot. We'll continue to review the original action. But there's no evidence that EPA is engaged in anything like that here. How do we understand the timeline here? It seems like your brief is saying we made a decision three years ago that we never told the Sacketts about. And then on the eve of this brief that had to be filed, we did tell them. And now we're writing a brief that says the opposite of what we thought we were in the middle of litigation about. Why is that not bad faith conduct? There is a policy change. There's a new rule, a new final rule defining waters of the United States that went through public notice and comment. It was finalized earlier this year. It became effective. The plaintiffs themselves have been defending that new rule. Over hundreds of thousands of comments came in that the agency responded to. That is a legitimate good faith effort and policy change. So I think this Court has a baseline of case law that says you have to presume that the government acts in good faith. Well, that policy change here is an ample demonstration that government is acting in good faith. It is moving forward. In 12 years across the administrations of three different presidents, EPA has not taken active steps to enforce this order against the plaintiffs. But you've been litigating this case the whole time. I mean, now you're trying to get out of it, I guess. But it's not... I mean, they've been litigating this case to show that their land is not under the jurisdiction of the Clean Water Act. And the government has continued to fight that. And now they have a rule promulgated through notice and comment rulemaking that they believe that they say in the reply brief at page 22 doesn't cover them. So if you agree, then I think we could have you withdraw the jurisdictional statement that says otherwise, right? I mean, but it seems like you're not making the representations here that would show that you actually agree with them. The problem here, so just from a purely legal standpoint, there are lots of documents in the administrative record that we relied on in defending that administrative compliance order and the assertion of jurisdiction. This form was just one of them. I mean, the form references, as I mentioned, it references field notes on pages 209, 210, 212. There are multiple references, see field notes. What else do we have to withdraw? Do we have to withdraw the field notes as well? I mean, I'll put that to EPA if they need to. But it's sort of, you know, I'm not trying to be insulting. It's sort of a point of where do they need to stop? Do they have to repudiate every document in the administrative record? I mean, those field notes are at SCR 84, beginning at SCR 85 and continuing. They're a very informal document. I don't know if you can see this. It's all handwritten. And I mean, those were supportive of the agency decision as well. They're referenced by this form. Do we need to withdraw those too? I don't expect an answer, but I'm just making the point that once we start down this path, I don't know where it ends, short of withdrawing or repudiating the entire administrative record itself. Mr. Chilton, would you at least... Is there any kind of clearer statement that could be given? I mean, so I don't know the exact procedures, but is there some statement that the agency in theory could give that would show that they don't have to worry about the Clean Water Act on this property? It's the approved jurisdictional determination by the Corps of Engineers that's discussed in 331 and 331.2. That provides a formal process for applying to the Corps and obtaining that answer. That answer today would be given under the new regulations for any activity that they want to conduct filling wetlands that are still on their property today. So how long does that take? I don't know the exact timeline, but it's judicially reviewable. I mean, the Supreme Court in Hawks made that clear. If they don't like the answer, it's a final agency action they can challenge in court. And mind you, their view is that they're not covered. That's the basis on which they are participating on the side of EPA, defending this rule across the country. Okay. I think Judge Otake... Mr. Chilton, how would you respond to the plaintiff's argument in their reply brief that the Grosserth case is distinguishable because the J.D. in this case can control future agency decisions, whereas in Grosserth, the cessation of the timber sale could not control future decisions? I would respond that there's a new regulation that will govern new fill of wetlands on the property and that this jurisdictional determination, this form, this hand-completed document, it relates to that rule from the 1980s that's now been replaced. So would you say then that this document, the handwritten document that we've been talking so much about, that that cannot control future agency decisions in this case? I would agree with that. It doesn't control what the plaintiffs are concerned about, which is any new fill of wetlands. If they're worried about an enforcement action, they haven't mentioned the threat of enforcement action, but as I mentioned before, we didn't plead a counterclaim in our answer. That was in 2012, and then we filed another answer to their supplemental complaint in 2015. They may have a good argument that we're bound. We've waived that. We also have a statute of limitations against fines, forfeitures, monetary penalties that would apply. It's 28 U.S.C. 2462. So in any enforcement action that EPA brought based on this old document that's in the administrative record, it couldn't seek fines or forfeitures because more than five years have passed. So I think those two things are clear. And I think this relates a little bit, or it kind of feeds into your question about gross art, feeds into a question Judge Gould had earlier about whether there would be a different record here. If the agency tried to reissue a new compliance order today, first of all, it would have to be under the new regulations, and it would have a new administrative record supporting it. Presumably that the material that we already have supporting the old compliance order would be relevant and probably included, but it would likely include other documents as well. So it would be a different record. It would be a different regulation. And for those reasons, this case is like gross art. If I could turn briefly to the collateral consequences exception that my friend mentioned, there is not a single case that either party has cited or that we're aware of holding that that collateral consequences exception to mootness applies outside the habeas corpus context. So this court has rejected it in the context of administrative warrants that have already been executed. So this court would be breaking new ground if it held that. And we would urge the court not to expand that exception to mootness doctrine. Briefly, that means that if they have an obligation to disclose if they want to sell this land, that it might be enforced against because the EPA has said it's a wetland. You don't think that relates to our mootness problem here? So this gets back to the legal status of the document here. We don't think this document was binding at the time it was issued on EPA, nor do we think it's binding today. And I'll tell you if I could briefly go, I see I'm out of time, but I'd like to just briefly go over to finish my response to that. Let me just say, on your time, I'll give you back the extra three minutes I was going to give you at the start. Thank you. So we don't think that that document was legally binding because it was issued, was prepared in the field by a staff ecologist by EPA. And if you look at the administrative compliance order, the first paragraph of it on the first volume of excerpts of record at page 32, it talks about the authority that the official who issued the order has delegated from the administrator to the regional administrator and then re-delegated to this director or acting director of a sub-office within the regional office. This staff ecologist was none of those personnel. He did not have the authority to bind the agency simply by recording his field observations on this form. And just as a final matter, I would urge the court to look at the complaint and answer here at volume two of the ER, pages 96 is the answer and page 107 is the complaint, where plaintiffs allege and EPA acknowledges that Mr. Olson completed this form while he was at the plaintiff's property with a core staff staffer. So that's the context in which this document was prepared. It was the results of Mr. Olson's observations from, you know, memorialized in his handwritten notes, memorialized in the July 1st, 2008 memo that's at ER 213 to 231. All of these were conveyed over the, you know, this information was conveyed to the actual decision makers who then issued the compliance order. But Mr. Olson himself did not have any authority to make a legally binding statement on EPA. So I don't think that this is a legal, has any legal effect that plaintiffs need to disclose under the state law. And with that, we would ask that the court hold that this case is moot and remain with instructions to vacate the district court. Mr. So thank you and I appreciate your argument. Now we'll return to Mr. Francois. Now let's see, we should have five minutes. Thank you, Your Honor. I want to start by agreeing with my colleague that if the court does agree that the case is moot, then that should include an order vacating the district court's decision in the case, under the Munsingwar case. So a couple of points on mootness. The question of whether the jurisdictional determination is separately reviewable, Judge Gould, you asked about that. We agree with Judge Freeland's view of this, that that's not necessary in order to determine that the case is not moot. But we also do argue that the jurisdictional determination would be separately reviewable. In a certain sense, that's all we've been doing in this case anyway, is seeking judicial review of that jurisdictional determination. But if you apply the Hawks case, EPA argues that you would have to go through the Army Corps' approved jurisdictional process in order to get a reviewable jurisdictional determination. But what Hawks really says is that Army process yields a final agency action. We've shown in our reply brief, by looking at the agency enforcement memoranda, that the agency's, the EPA's jurisdictional determination, in this case, is the official agency position under those memoranda. And we would argue that that official agency position meets the Bennett and Speer test that Hawks and the Supreme Court's decision in this case used. It's the consummation of the agency's decision making. And certainly it's... Mr. Francois, in Hawks, didn't the court agree or not dispute that the J.D. there was the consummation of the Corps' decision making process, whereas that's not the case here? That's contested here, right? Well, I'm not sure I agree with that, Your Honor. The agency has argued in a variety of ways that the J.D. has no separate legal significance. But it's certainly the consummation of their decision making. They issued the... Right, but in Hawks, it says the court does not dispute that an approved J.D. satisfies the first Bennett condition, right? So that was not disputed in Hawks. It may not have been disputed in Hawks, Your Honor, but we think it applies here. That the compliance order itself is law of the case. In this case, the compliance order was the culmination of the agency's decision making process. The J.D. is part of that. In fact, my friend on the other side has emphasized that the J.D. is the documentation for the decision that the appropriate EPA official made to reissue the compliance order. So we do think it's the culmination of the agency's decision making, and it clearly has legal effect. It requires the... It puts the sackets on notice, if nothing else, that if they proceed at their own risk and are wrong, that they're subject to further enforcement or a citizen suit. And it's, you know, we think we've cited clear authority from the state of Idaho that it's disclosable in a real property sale. The final point I wanted to make with my remaining time has to do with the significant nexus determination that the agency made in the Olson memo. And the point there is that they have inappropriately, they've arbitrarily and capriciously treated the sackets lot and the wetland that's across the street from it, across the road from it, as similarly situated. And our brief goes into this in detail, but the only connection that the Olson memo and the jurisdictional determination form draw between the sackets lot and the wetland across the road is speculative, that there may be a groundwater connection. And the, I think the San Francisco Baykeeper versus Cargill case says that's inadequate for established jurisdiction. The agency also argues in closing that the lot is itself directly adjacent to Priest Lake. That's not one of the bases upon which the decision was to be affirmed on that basis. With that, I'll conclude. We would ask the court to rule that the case is not moot and that the sackets property is not regulated under the Clean Water Act. Thank you, Your Honor. Thank you, Mr. Francois. Well, both counsel for appellant and counsel for appellees have been stirring arguments that are very well done. In fact, when I hear excellent advocacy, like the two of you have given us, it always makes me kind of almost mistful remembering advocacy days decades ago. But you've done fine jobs in the best traditions of the bar. I wish there were some simple answer here we could give you from the bench, but there isn't. We can't. So I'll just have to say that unless one of my colleagues has a further question or comment, this case shall now be submitted. I actually, is there any chance that if we sent you to mediation, you could work out whether this property could be built on? That's a hard question to answer, Your Honor. We did spend some time with the circuit mediator. Obviously, we'd be willing to revisit. Did you spend the time with the circuit mediator after the point where the government said it was thinking this case was moot, or was it before? It was before, I think. Isn't that correct, Brian? Yeah. So it seems like you're closer to agreement now than you were then. I'm wondering whether this case could potentially settle. I wouldn't be opposed to exploring that. Perhaps we should communicate directly on that, Your Honor, and could then inform the court if we engage in that. I think what our normal practice would be, would be if there's a chance of mediation being undertaken, we would ask the circuit chief mediator for the circuit to contact both parties and to determine if they wanted to proceed and if either of them did not want voluntarily proceed. The mediator would tell us the case wasn't being mediated, and we wouldn't be told whether both or only one of the parties didn't want to mediate. So I think our panel can discuss this in conference, and if you get a mediation order, there will be that type of an order that will leave the hands free of both parties to decide if they voluntarily want to mediate, and if anyone doesn't want to, our panel will not be told about that communication, except we'll be told to go with our decision. Okay, so without, unless there's further question, I think they're not being, I'm just going to again commend both of you for excellent arguments under the typically trying circumstances that arise in these Clean Water Act cases, coupled with the extra burden of COVID-19. So thank you. Stacey, the second case shall now be submitted, and the parties will hear from us in due course. Judge Gould, if it would be okay, I think it would be helpful to have a short break, if that's okay. Yeah, the court will now take a 10-minute break, and then after that, we've got Spencer.
judges: Gould, Friedland, Otake